**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TYREE CORNELIUS DYE,             Civil Case No. 13-cv-10409
                                                     Criminal Case No. 09-cr-20105
        Petitioner,

v.                                                     Sean F. Cox
                                                   United States District Judge

UNITED STATES OF AMERICA,

        Respondent.
_____/

**OPINION AND ORDER**
**DENYING PETITIONER TYREE DYE'S § 2255 MOTION AND GRANTING THE GOVERNMENT'S MOTION TO DISMISS**

Before the Court is Petitioner Tyree Dye's ("Dye") Motion to Vacate under 28 U.S.C. § 2255 and the United State of America's ("the Government") Motion to Dismiss Dye's Motion to Vacate.

Having reviewed the pertinent materials in this case, the Court sees nothing that requires factual development at an evidentiary hearing. *See* 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); s*ee also Fontaine v. United States*, 411 U.S. 213, 214–15, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) (holding that a petitioner is entitled to an evidentiary hearing unless the files and records of the case conclusively show that the petitioner is not entitled to relief). Likewise, the Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not

1

significantly aid the decision making process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided on the briefs.

For the reasons that follow, this Court shall **DENY** Dye's Motion to Vacate and **GRANT** the Government's Motion to Dismiss.

## BACKGROUND

The underlying criminal action involves a multi-defendant drug conspiracy. On October 16, 2009, a third superceding indictment was returned charging Dye with: (1) Possession with Intent to Distribute Marijuana and Aiding and Abetting the same under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (2) Conspiracy to Distribute Marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (3) Forfeiture pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 924. (Docket Entry No. 54.) Defendant Dye's acknowledgment of the third superceding indictment was filed on the same day. (Docket Entry No. 61.)

On or around January 11, 2010, Dye signed a Rule 11 Plea Agreement, agreeing to enter a plea of guilty to count 3 in the third superceding indictment, which charges Dye with conspiracy to distribute marijuana. (Docket Entry No. 100, at 1.) When he signed the plea agreement, Dye was represented by Attorney Marlon Blake Evans. (*Id.* at 13.) The factual basis for Dye's plea is stated as follows:

> Beginning in approximately 2005 and continuing until in or about September 2009, in the Eastern District of Michigan and elsewhere, Tyree Dye conspired and agreed with one or more of his co-defendants to distribute marijuana. During the course of the conspiracy, Tyree Cornelius Dye, Akil Juma Young, Andrew Terrence Diggins, II, Terrence Cooper, Anthony Jamarr Flourney, Johnny Earl-Milo Taylor, II, and others traveled from Michigan to Arizona in order to obtain large quantities of marijuana. While in Arizona, Tyree Cornelius Dye and his co-conspirators purchased and repackaged the marijuana for shipment to Michigan. Robert Glee

> Martin and Helen Marie Martin transported the marijuana to Michigan, where it was divided among the conspirators for their further distribution.
> Tyree Cornelius Dye arranged the purchases of marijuana in Arizona, coordinated the trips to Arizona, collected money from members of the conspiracy in order to purchase marijuana and hired Robert Glee Martin and Helen Maire Martin to drive the marijuana from Arizona. For purposes of sentencing, the parties agree that Tyree Cornelius Dye was an organizer or leader of a criminal activity involving five or more participants. Tyree Cornelius Dye could reasonably foresee that the conspiracy involved the distribution of 1,000 kilograms, or more, of marijuana.

(*Id.* at 2–3.) The agreed guideline range in the plea agreement is "135 - 168 months." (*Id.* at 4.) In the plea agreement, the United States Attorney recommended a three level reduction for acceptance of responsibility. (*Id.* at 4–5.) The plea agreement further states "the court **must** impose a sentence of imprisonment on count three of at least ten years" and **"must** impose a term of supervised release on count three of no less than five years." (*Id.* at 5–6.) The parties agreed that "[i]f the court accepts this agreement, the government will dismiss count one of the third superseding indictment. In addition, the government will not bring additional charges against defendant based on any of th conduct reflected in the attached worksheets." (*Id.* at 9.) The plea agreement allowed Dye to withdraw if the Court imposed a higher sentence than the maximum allowed by the agreement. (*Id.* at 10.) Furthermore, in the plea agreement, Dye agreed to waive his right to appeal his conviction or sentence "in any post-conviction proceeding, including-but not limited to-any proceeding under 28 U.S.C. 2255." (*Id.*)

On January 11, 2010, this Court held a plea hearing. (Dye Plea Hearing, Jan. 11, 2010, at 1.) At that hearing, Dye testified as follows:

> THE COURT: All right. Mr. Dye, what is it that you did which makes you believe you are guilty under Count Three of the third superceding indictment of conspiracy to distribute marijuana?
> DEFENDANT DYE: I agreed to distribute 1,000 kilos of marijuana.

3

> THE COURT: Okay. Did you agree with a group of others to distribute 1,000 kilograms or more of 17 marijuana?
> DEFENDANT DYE: Yes.
> THE COURT: And did you knowingly, intentionally and voluntarily join this group?
> DEFENDANT DYE: Yes.
> THE COURT: And when was this conspiracy operating? Roughly what time was the conspiracy operating?
> DEFENDANT DYE: It was about '06 --
> THE COURT: 2006.
> MR. EVANS: '06 to February.
> THE COURT: Of this year?
> MR. EVANS: Of '09, yeah.
> THE COURT: And where was the conspiracy operating?
> DEFENDANT DYE: Arizona and Michigan.
> THE COURT: Okay. Where in Michigan?
> DEFENDANT DYE: Flint.

(*Id.* at 21:9–22:9.) After determining that Dye's plea of guilty to count 3 was knowingly, freely and voluntarily made, and that the elements of that offense were made out by Dye's statements in court, the Court accepted Dye's plea. (*Id.* at 23:1–6.)

On April 23, 2010, this Court **GRANTED** attorney Evans' oral motion to withdraw as counsel, which was based on irreconcilable differences between Dye and Evans over Evans' handling of the case. (Docket Entry No. 107; Hearing Regarding Evans' Oral Motion to Withdraw as Counsel, April 23, 2010, at 9:12–10:12.) At the April 23, 2010, motion hearing, Dye requested that this Court appoint new counsel to represent him in this matter. (Docket Entry No. 163, at 10:7–12.) The sentencing hearing was adjourned, and the Court scheduled a status conference in this matter. (*Id.* at 10:10–13.)

On or around April 26, 2010, attorney William Swor was appointed to represent Dye. (Docket Entry Nos. 108, 115, 118.) On September 24, 2010, Dye, purportedly acting *pro se*, filed three motions: a motion to show cause, a motion to request bond, and a motion to withdraw plea.

4

(Docket Entry Nos. 142, 143, & 144.) Shortly thereafter, on September 26, 2010, Swor filed a Motion to Withdraw as Counsel, stating as follows:

> 2. At the time of counsel's appointment, Mr. Dye had filed a pro se motion to withdraw his guilty plea, which was then pending before this Court.
> 3. Both Mr. Dye and the attorney for the government agreed that Mr. Dye's motion should not be heard by the Court until the undersigned counsel had an opportunity to review the discovery material provided in this case, and give informed advice to Mr. Dye.
> 4. Upon appointment, prior counsel was contacted and requested to provide the discovery to the undersigned counsel.
> 5. Prior counsel did not provide the discovery for almost six (6) weeks.
> 6. Undersigned counsel reviewed the discovery as promptly as possible.
> 7. After reviewing the discovery, counsel met with Mr. Dye at the Genessee County Jail and discussed the options for proceeding with this matter . . . .
> 8. Based upon counsel's conference with Mr. Dye, counsel began to pursue a course of preparation, and, advised this Court that Mr. Dye would not seek to withdraw his plea.
> 9. At that point, counsel began to prepare a sentencing memorandum, with objections, as discussed with Mr. Dye.
> 10. Communication between counsel and Mr. Dye has been hampered by the telephone system in place at the Genesee County Jail, which does not allow Mr. Dye to call counsel's office, which has an automated telephone attendant, even to leave a message.
> 11. On or about September 24, 2010, Mr. Dye filed a new pro se motion to withdraw his plea, alleging, *inter alia*, actual innocence.
> 12. In light of the motion, counsel cannot proceed to sentencing, and cannot submit a sentencing memorandum, for the reason that the position required by those matters are inconsistent with the positions taken by Mr. Dye in his motion.
> 13. Based on the statements in the motion and other pro se pleadings filed by Mr. Dye that day, it is clear the Mr. Dye is accepting advise from someone other than counsel, and the attorney-client relationship has broken down.

(Docket Entry No. 145, at 2–3.)

On September 29, 2010, the Court entered an Order Striking Docket Entry Nos. 142, 143, and 144 because Dye was represented by counsel and was proceeding in this matter in a hybrid fashion, both through his counsel and *pro se* by way of his motions. (Docket Entry No. 147.)

5

On October 6, 2010, after holding a hearing that same day, this Court **GRANTED** attorney Swor's motion to withdraw as counsel. (Docket Entry No. 149.)

Thereafter, on or around October 6, 2010, attorney Henry M. Scharg was appointed to represent Dye in this matter. (Docket Entry Nos. 150, 152)

On January 10, 2011, Dye, though his attorney, filed a Motion to Withdraw Plea of Guilty "on the grounds that he is not guilty of the offenses charged in the Third Superseding Indictment and that the plea of 'Guilty' was entered involuntarily, without effective assistance of counsel, and without understanding of the nature of the charges, the effect of the plea, or of his constitutional rights." (Docket Entry No. 153.)

On May 2, 2011, after holding an evidentiary hearing on April 15, 2011, this Court entered an Opinion and Order Denying Defendant's Motion to Withdraw Guilty Plea. (Docket Entry No. 172.)

On May 24, 2011, Dye submitted a sentencing memorandum, objecting to the sentencing guideline range agreed to in the plea agreement, and stating as follows:

> Mr. Dye does not dispute the wrongfulness of his conduct; he accepts that he violated the law, and recognizes that he must face the consequences of his actions. Mr. Dye admitted his involvement in the instant offenses and agreed to assist law enforcement in the investigation and prosecution of others involved in criminal activity . . . .

(Docket Entry No. 174, at 6.)

Thereafter, on June 29, 2011, attorney Scharg filed a Motion to Withdraw as Counsel, stating as follows:

> 3. During the course of counsel's representation, the Defendant has on numerous occasions raised concerns that counsel has not provided effective assistance of counsel and was not zealous in his attempts to has [sic] the Defendant's guilty plea withdrawn.

> 4. It appears that there has been a breakdown in the attorney-client relationship to the extent that new counsel should be appointed or that the Defendant should have the opportunity to retain his own counsel.
> 5. That the interests of justice should compel this Court to allow counsel to withdraw and appoint appellate counsel to enter an appearance on behalf of the Defendant.

(Docket Entry No. 180, at 1–2.)

On July 5, 2011, this Court **GRANTED** Scharg's Motion to Withdraw as Counsel. (Docket Entry No. 184.)

On July 7, 2011, this Court entered Judgment, holding that, based on Dye's guilty plea to count 3 in the third superceding indictment, Dye shall be confined for a total term of 168 months, and that, upon his release, he shall be on supervised release for a period of 5 years. (Docket Entry No. 186.)

On or around July 12, 2011, attorney Carol Stanyar was appointed to represent Dye. (Docket Entry Nos. 187, 191.)

Dye filed a Notice of Appeal, through his attorney, from the Judgment on July 20, 2011, raising one issue on appeal: (1) whether the district court abused its discretion in denying his motion to withdraw his plea of guilty? (Docket Entry Nos. 188, 196.) On June 15, 2012, the Sixth Circuit dismissed Dye's appeal, holding that "[t]he district court complied with the requirements of Federal Rule of Criminal Procedure 11" by accepting Dye's plea, and the Court cannot provide any relief because Dye waived his right to appeal his conviction in the plea agreement. (Docket Entry No. 196, at 1–2.)

On January 31, 2013, Dye filed his Motion to Vacate Sentence under § 2255. (Docket Entry No. 201.) The Government filed a Motion to Dismiss Dye's Motion to Vacate on April 8, 2013. (Docket Entry No. 213.) Dye filed his reply on May 6, 2013. (Docket Entry No. 216.)

## STANDARD OF REVIEW

To prevail under § 2255, the record must reflect a fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error that violates due process. *See Riascos-Suarez v. United States*, 221 F.3d 1335 (6th Cir. 2000) (citing *Wright v. United States*, 182 F.3d 458, 463 (6th Cir.1999)); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). "[A] petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (internal citation omitted). Non-constitutional errors are generally outside the scope of § 2255 relief. *See United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing "a fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (6th Cir. 1999) (internal citation omitted).

## ANALYSIS

In his Motion to Vacate, Dye contends that: (1) this Court lacked jurisdiction over this matter because the grand jury process was defective; (2) the plea agreement is defective and contained conflicting terms; (3) Dye's attorneys provided him with ineffective assistance of counsel for (a) failing to discuss the "ramifications" of the plea agreement with Dye, (b) not conducting any pretrial investigation or developing a "case defense strategy", (c) not filing a motion challenging an allegedly defective warrant, (d) failing to call or investigate an alibi witness, (e) failing to argue, prior to or during sentencing, that the amount of drugs attributable to Dye was not reflected in any evidence

presented by the Government; (4) Dye's plea was not knowingly or voluntarily made; and (5) the Court erred when it imposed Dye's sentence.[1] (Docket Entry No. 201.)

A. The Grand Jury Process–Lack of Jurisdiction Argument.

Dye argues that (1) he was charged with a draft indictment that was not presented for consideration and vote, (2) the electronic signature of the foreperson does not comply with court rules, and (3) the Third Superceding Indictment was invalid because it was issued more than 18 months from the date the grand jury convened. (Docket Entry No. 201, at 22–23.) After reviewing the indictments, the Court finds all of these arguments are without merit, unsupported by court rules and the evidence Dye presents in his motion, and nonsensical. Regardless, for the reasons that follow, Dye knowingly, voluntarily, and freely agreed not to challenge his conviction by filing a motion to vacate under § 2255 by signing the plea agreement and entering his plea.

B. The Appeal Waiver in the Plea Agreement As It Relates to: (1) Dye's Ineffective Assistance of Counsel Claims; (2) the Knowing and Voluntary Nature of Dye's Plea; and (3) the Alleged Defective Plea Agreement.

In the plea agreement, Dye agreed to waive his right to appeal his conviction and sentence "in any post-conviction proceeding, including-but not limited to-any proceeding under 28 U.S.C. 2255." (Docket Entry No. 100, at 10.)

Plea agreement waivers of § 2255 rights are generally enforceable. *See Davila v. United States*, 258 F.3d 448, 450 (6th Cir.2001) (citing *Watson v. United States*, 165 F.3d 486, 489 (6th

---

[1] The majority of Dye's claims of ineffective assistance of counsel relate to attorney Marlon Evans' representation of Dye, particularly his claims based on the failure to discuss the "ramifications" of the plea agreement with Dye, not conducting any pretrial investigation or developing a "case defense strategy", not filing a motion challenging an allegedly defective warrant, and failing to call or investigate an alibi witness. However, the Court has considered all of the attorneys' conduct in this matter, as well, for the purposes of this opinion an order.

Cir.1999)). Valid plea agreement waivers must be entered into "knowingly, intelligently, and voluntarily." *Id.* at 451. A collateral attack waiver generally does not bar review of claims "that go to the very validity of a guilty plea." *In re Acosta*, 480 F.3d 421, 422 (6th Cir.2007). Thus, Dye may properly assert that his § 2255 waiver was not entered into knowingly, voluntarily, or that the agreement was a product of counsel's ineffective assistance. *See id.*, n. 2.

Thus, as a preliminary matter, the issues that this Court must consider is whether Dye's plea was knowingly and voluntary made, and not the product of ineffective assistance of counsel. The Court will also consider whether the plea agreement was defective because it contained conflicting terms because it is related to the validity of the plea.

At the plea hearing, Dye responded affirmatively to questions regarding his understanding of all the charges brought against him, the sentence proposed in the Rule 11, the rights he was waiving by pleading guilty, and all other consequences resulting from his plea. After accepting his plea, but before the sentencing hearing, Dye filed a Motion to Withdraw Plea of Guilty "on the grounds that he is not guilty of the offenses charged in the Third Superseding Indictment and that the plea of 'Guilty' was entered involuntarily, without effective assistance of counsel, and without understanding of the nature of the charges, the effect of the plea, or of his constitutional rights." (Docket Entry No. 153.) This Court conducted an evidentiary hearing to address Dye's motion, under Federal Rule of Criminal Procedure 11(d), on April 15, 2011. Attorney Marlon Evans testified at that hearing, and Dye, who was represented by attorney Scharg at that time, raised the issue of whether Evans failed to discuss the "ramifications" of the plea agreement with Dye prior to entering his plea. After considering Dye's arguments, this Court issued an Opinion and Order Denying Defendant's Motion to Withdraw Guilty Plea, holding as follows:

> Defendant asserts that he entered his plea 'involuntarily, without effective assistance of counsel, and without understanding of the nature of the charges, the effect of the plea, or of his constitutional rights.' [Def.'s Mtn. at 1.] As stated above, Defendant claims that he never met with his former attorney, Mr. Evans, prior to the plea hearing to discuss the Rule 11 plea agreement. *Id.* Defendant's motion provides, "Mr. Evans never provided Mr. Dye with a copy of the plea agreement until just prior to the plea hearing and never discussed the provisions of the plea agreement or the sentencing guideline ranges with Mr. Dye until he was escorted into the courtroom by U.S. Marshals." *Id.* at 3.
>
> Based on the evidence and testimony received at the April 15, 2011 evidentiary hearing, the Court finds that these allegations are false. In addition to Mr. Evans' convincing testimony on the matter, Mr. Evans' office records clearly indicate that a copy of the Rule 11 plea agreement and a copy of the discovery were sent to Defendant on December 18, 2009. [Evid. Hrng., Gov. Ex. 3]. Moreover, Sanilac County jail records confirm that Mr. Evans met with Defendant on at least one occasion (January 3, 2011) to discuss the plea agreement with Defendant.
>
> It was not until after Defendant interacted with his co-defendants at Sanilac County jail, namely Robert Martin, that he began pursuing his plea withdrawal. [Evid. Hrng. at 32]. The evidence indicates that Defendant knowingly and voluntarily entered his plea and that he is unhappy with the outcome of his attempt to cooperate with the Government.

(Docket Entry No. 172, at 11–12.) Thereafter, Dye filed a Notice of Appeal from the Judgment, raising one issue on appeal: (1) whether the district court abused its discretion in denying his motion to withdraw his plea of guilty. (Docket Entry Nos. 188, 196.) On June 15, 2012, the Sixth Circuit dismissed Dye's appeal, holding that "[t]he district court complied with the requirements of Federal Rule of Criminal Procedure 11" by accepting Dye's plea, and the Court cannot provide any relief because Dye waived his right to appeal his conviction in the plea agreement. (Docket Entry No. 196, at 1–2.) Accordingly, the issues of whether Dye's plea was knowingly and voluntarily made, and whether the plea was the product of ineffective assistance of counsel, have already been addressed by this Court. Regardless, Dye does not present any new evidence suggesting that his plea and the appeal waiver provision were not knowingly, voluntarily, and freely entered into.

With regard to Dye's other claims of ineffective assistance of counsel, the Court holds that Dye knowingly waived his right to file this instant motion and to appeal his sentence and conviction. Dye's other claims of ineffective assistance of counsel fall under that waiver. Regardless, the Court holds that Dye's ineffective assistance of counsel claims have no merit and are generally unsupported. The two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), governs the analysis of Dye's ineffective assistance of counsel claims. The first prong requires Dye to show that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. The second prong requires Dye to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Court cannot find anything in the record, or in Dye's motion, suggesting that he was provided ineffective assistance of counsel by any of the four attorneys who represented him in the underlying criminal action.

Finally, Dye's assertion that the plea agreement is defective is unsupported by the terms of the plea agreement. Paragraphs seven and eight do not contradict each other. Paragraph 7 addresses the appeal waiver provision, and paragraph 8 describes the consequences of vacating the guilty plea or conviction. (Docket Entry No. 100, at 10–11.) These are standard provisions in many of the plea agreements that come before this Court. Simply because the Government contemplated the potential vacation of Dye's plea and conviction in the plea agreement does not invalidate or void the plea. Likewise, the use of "his/her" in those provisions, by itself, does not render the agreement void.

**C.     Dye's Sentence.**

Dye contends that his sentence was unjust and was incorrectly scored pursuant to the sentencing guidelines. All of Dye's claims with regard to his sentence have no merit. Regardless, because Dye's plea and the waiver provision in the plea agreement were knowingly, voluntarily, and freely entered into, and not the product of ineffective assistance of counsel, Dye waived his right to challenge his sentence.

**D.     Denial of Certificate of Appealability.**

A certificate of appealability must issue before a petitioner such as Dye may appeal the district court's denial of his § 2255 Motion. 28 U.S.C. § 2253(c)(1)(B); FED. R. APP. P. 22(b). Section 2253 provides that a certificate of appealability may issue only if a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). As the United States Supreme Court has explained this standard:

> the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.

*Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983). "Where a district court has rejected the constitutional claim on the merits, the showing required to satisfy 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a certificate of appealability is issued by a district court, it must indicate which specific issue or issues satisfy the required showing. 28 U.S.C. § 2253(c)(3).

After careful consideration, the Court concludes that reasonable jurists would not find the Court's assessment of Dye's claims debatable or wrong. The Court shall therefore decline to issue a certificate of appealability.

**CONCLUSION AND ORDER**

**IT IS ORDERED** that Dye's Motion to Vacate is **DENIED**, and the Government's Motion to Dismiss is **GRANTED**. The Court **SHALL NOT** issue a certificate of appealability.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: July 23, 2013

I hereby certify that on July 23, 2013, the foregoing document was served upon counsel of record by electronic means and upon Tyree Cornelius Dye by First Class Mail at the address below:

Tyree Cornelius Dye #42730-039

Loretto Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 1000
Loretto, PA 15940

Dated: July 23, 2013                                S/ J. McCoy
                                                    Case Manager